Marti v. Iberostar Hoteles Y Apartments SI in our apartments. Mr. Patricius. Good morning, Your Honor. Um, the Al Patricius on behalf of the appellant. The issue before you have any good news from us from Europe? Um, there was a status report filed, Your Honor, which I can get into. But if you're interested, I can answer that question. We don't have an answer from the commission. Just that they're gonna give us an answer by mid September. Today's the 16th. We still don't have an answer. We don't have an answer, Judge. And that presumes that we should be waiting for their answer, which my argument is we should never be waiting for the argument. I understand. And that's our primary. Just try. I just wanted to know if we had one and your honor. I think both council would recognize even after oral argument. If a decision does come out, I think we would both notify this court of anything that does come out again. I don't think it's relevant for the decision. That's not my decision to make. I think the court is entitled to that information. We would certainly file and notice if something comes out. Well, if there were permission granted, yes, we would ask for permission. Judge, you know, you would say that's not relevant. We wouldn't want to know that. Well, I don't think it is relevant. And the reason I don't think it's relevant, Your Honor, is because United States district courts should not take a foreign executive branches decision as the point upon which they will decide whether to move forward or move, not move forward. Yeah, but I mean, my point is, if the foreign government has no objection, then it sure makes life easier, doesn't it? It would judge it would, but we don't know what they're gonna say. We don't know if they're gonna say anything. The point is, as we sit here today on the record that is before this court, we believe Judge Scola got it wrong when he decided to defer this case. Stay this case pending the ruling of an executive branch of a foreign government using a foreign law that was designed to interfere with United States law. We do not believe that should be the precedent. And just to make sure, and then I promise we'll let you get to the real argument. But no matter if we got a ruling, no matter what the ruling was, that would dissolve this day, right? It should judge grant. It should, because what Judge Scola said is upon a decision from that body, he would move forward. But we don't know what the body will say. We don't know if it says something like, I need further information. So it could. But it shouldn't stop this court from addressing the issue that is here. Why? Courts have already started to cite, and litigants are citing the Marti case before Judge Scola as precedent. Just this... Well, anyone who cites a district court opinion as precedent is committing malpractice. I won't mention... District court opinions aren't precedential. They're arguing that it is persuasive. They're arguing that this is what a judge did in another case. That's a different argument. And the precedent that we think this court should make is to say quite clearly, because there's quite a few Helms-Burton cases out there, and there's obviously quite a few European defendants out there, is that the district courts should not be deferring their decisions or staying cases based on what these foreign bodies are saying. To put it in perspective, Judge, it's 884 days ago, two years, five months, that the stay or the request for the stay was entered. And the request was made by a foreign defendant, Iberistar, to a foreign executive branch, the European Commission, with a foreign law asking authorization to participate in United States courts. And there was not one 11th Circuit case that I could find that supports that proposition at all. In fact, this court has been very clear as to the circumstances that would allow a court, a district court, to stay. And I'll give your honors two examples. The first example would be Turner Entertainment versus de Ghetto, 25 Fed Third, 112, 11th Circuit, 1994. In that case, there was a parallel adversary proceeding in Germany that went to final judgment. This court noted, all the parties to the American litigation were parties to the German litigation. That's note six of that opinion. This court noted that the central issue in the German case was the same as in this case. So what did we have there? We had parallel proceedings. We don't have that here. We had a final judgment from the German court. We don't have that here. We had a, and we looked at whether the state reflected a proper respect for a foreign nation. The problem, it seems to me here, given those differences, is this doesn't even look like it's out of respect for a nation. This looks like it's out of respect for a foreign litigant. You couldn't have said it better, Judge Pryor. This has got nothing to do with the nation. It's got something to do with the litigant who is afraid of a potential fine. We pointed out to the district court at least five occasions where European defendants had participated in U.S. cases and had not been fined. So that was a supposition by the Iberostar that they were going to be fined. Another case that your honors set of state was fined was Miccosukee Tribe versus South Florida Water Management, 559 Fed Third 1191. In that case, the tribe had sued the South Florida Water Management District over four or five permits in case number one. They had an identical case about one court back to this court back to the district court. The judge in case number two said, I'm going to stay in my case number two because the issues in case number one are going to dispose of the issues in case number two. We don't have that here in this case because we don't have a proceeding that's going to dispose of the Helms-Burton matter in this case. To the contrary, your honor, there are many cases from this court where it found jurisdiction number one and reversed on the merits number two. The first case I'll cite to your honors is American Manufacturers versus Stone, 743 Fed Second 1519. In that case, a state court, United States state court action was pending that involved some of the parties and some of the issues as the federal case. The federal judge stayed the federal case pending the outcome of the state court case and this court reversed saying you cannot stay your case based on what's going to happen in a state court case because that's indefinite and unnecessary. It seems to me that your merits argument is easier than the jurisdictional argument. I'll turn to that judge. The jurisdictional argument, judge, the first point is this. I'm not aware of any precedent that says a litigant must appeal from the initial stay order and cannot later move for the court to lift the stay and appeal from that. What about what about the final order problem? Well that's that's where the the King case for the King versus Cessna case comes in your honor and that's your precedent from the 11th Circuit and it specifically says the general rule is that a stay is not a final disposition. I'm quoting from page 1165 of King which is 505 1160. To your point, the general rule is that a stay is not a final disposition and thus is not immediately appealable. Quote, however there is an exception for stays that put a plaintiff quote effectively out of court end quote and applying that exception we have held that a stay order that is immoderate, step one, and involves a protracted and indefinite period of delay is final and appealable under 28 USC 1291. So we have that here in the third order that Judge Scola entered. Not the first order and not the second order. The test, going back to Judge Pryor, what I was saying to you is I'm not aware of a case that says just because you don't appeal the first stay order you cannot later appeal a denial of a motion to lift the stay and I'll cite a court an instance in which that happened from this court's precedent from the Fifth Circuit. We cited it in our briefs. It's the Hines case and the Hines case was a case from 1976 that we cited to your honors involved it's 531 Fed circuit 7 Fed second 725. In that case the district court sua sponte answered a stay of a 1981 action and said to the litigants plaintiff go to the EOC get a final process at the EOC then come back to me. Nobody appealed the stay order. A few months later in October of 1974 the parties moved to modify the stay. The judge modified it in part according to the court's opinion the Fifth Circuit's opinion but essentially adhered to his original request or demand which was go to the EOC. The parties or the plaintiffs then appealed that second order and the Fifth Circuit reversed. No discussion in that case judges of the fact of whether you have to appeal the first order or the second order the third quarter. I haven't found a case that discusses that and the reason is the the King test which says you have to be effectively out of court. In order to be effectively out of court in order to show that there's been a protracted and indefinite period of time it is a facts and circumstances case. You may not have it the moment the stay was entered. Part of the reason why I think whether we get an answer from the European Commission or not is important is I don't know how you can say that this is in a state of suspended animation if they do what they say they're going to do. If they do what they say they're going to do judge but that's been pending now for over two years and we don't know of any precedent that says we should wait two years not even a year. The courts have not set a time frame that we must wait. In fact this court has said you should not wait. You should not wait for the pending state court proceeding to finish. You should not unless it's parallel and that was the case with the German proceeding. This is not parallel your honors. I see my time is up. I think I've reserved some time for rebuttal. Okay Miss Placencia. I'm sorry. Good morning your honors. May it please the court. Rebecca Placencia and along with my partner Adolfo Jimenez from Holland and you said there's a major jurisdictional issue in this case. Without question the original April 2020 state order was not appealed and in fact in the reply brief on page 5 they admit that the April 2020 state order did not put them effectively out of court. They did follow motion. That was two years ago right? Haven't the circumstances changed? Well that's interesting because yes it's been two and a half years since the original state order has changed but the order and on reconsideration and this court is bound by the record that was before the district court and at that point in time only 5.5 months had passed since the September 2020 order denying the plaintiff's motion to lift the stay and the renewed motion to lift the stay um which reiterated all of the same arguments. It does seem like it was a substantial alteration of the stay when when the motion to uh to limit the state to no longer than 75 more days was denied. Why isn't that a substantial alteration of the state? With the respect to the September 2020 order? The order we're here on today. So we're here on the May 2021 order which just says yeah you didn't meet the standard for reconsideration where they were re-arguing the merits of the September 2020 order and in the September 2020 order that's at that point in time the state had been in effect for yes longer than 75 days but they did not appeal that order and counsel is saying that he knows of no precedent of a motion to let the state not being a motion for reconsideration but this court in american manufacturers mutual insurance company versus stone mentions in in the footnote that the motion to let the state was not timely filed under any of um any of the deadlines set therefore which would toll the time for filing the appeal so even if because again there is there doesn't seem to be clear a clear precedent as to whether an original motion to let the state is the motion for reconsideration or its own original motion that restarts the appellate clock even if we can even if we claim that to be an original motion that September 2020 order was not appeal and that's the one that really has has the Turner analysis that explains that the district court was granting the stay on the basis of international comedy they did not appeal and they waited five and a half months to simply follow renewed motion for reconsideration they called a renewed motion to lift the stay that just says the exact same arguments if you compare the docket it's docket 21 and 32 it's almost identical except they're just adding it's been an additional five and a half months that's not sufficient that in and of itself is not sufficient and what about the communication that that reinforced the the intent to strengthen the regulation basically the policy against allowing enforcement of the Helms Burden Act and yet nothing was ever amended I mean the communication doesn't isn't new evidence it doesn't add anything it's simply the EC saying well the you know Helms Burden Act was 23 years now we're dusting off this EC regulation just like the Helms Burden Act was being dusted off okay you know to the extent we're getting applications and we're gonna have to start looking at this issue they didn't have time for as long as the Helms Burden Act was suspended really so was this EC regulation it wasn't being applied so you know they couldn't work the kinks out all this EC communication says is we're gonna look at this issue you know we may need to streamline the authorization process but it doesn't issue an amendment it doesn't put forth any definitive acts are going to take place nothing has changed the EC regulation remains as it as it was when it was enacted in 1996. What if instead of two years having gone by it's five years could that support renew sir could that be new circumstances that would support a renewed motion essentially a new original motion? I think so I think five years is you know excessive but again we have to look at this I know two and a half years from the date of the original order to this oral argument seems like a lot we have to put this in context of the fact that when the stay order was granted we had just started a global shutdown because of COVID it hit Europe particularly hard it it hit the hotel industry particularly hard I mean Iberostar was down to 5% of its staff that's in the record in one of the affidavits the EC quite frankly was probably dealing with bigger things than some random application that came in and as they were dealing with if it's just a wait why shouldn't we let this party carry forth its case in American courts? Well it's just that it's the first application it's ever seen of this Helms Burden Act I mean the plaintiffs even admits that this was the case of first impression so yes they're gonna look at it carefully because for them this is gonna set a precedent for other EU defendants and I know that opposing counsel has mentioned that they cited to five cases in their brief where other EU defendants appeared to have participated without first. I'm sure that's really responsible Judge Grant's question it seems to me that you know it's been this long it's the state can't you agree the state at some point becomes excessive isn't it time to get this moving? But first we're here on a motion for reconsideration order right so we're looking at the record as it appeared before the district court which was at that point five and a half months but even if you were to look at this two and a half year stay as of today the date of this oral argument we're looking at this quite frankly in context of the district court granted a stay in April 2020 that was the original stay and then Marti renewed her motion to lift the stay in March 2021 right that was the renewed motion to let the state yes there was a that's been that's over that's nearly a year well you keep talking about five months well because there was a July there was a July 2020 the original motion to lift the stay and that's the one where the plaintiffs argued what they're arguing here before this court that it is a moderate and indefinite that it's putting them effectively out of court and the district court issued a very detailed analysis in September 2020 saying in the interest of international comedy and because of the unique circumstances of this case and let me we're looking you  April 2020 then we have that July motion then we have a September ruling then we have a March of 2021 renewed motion I mean this is a lot more than five months right well the five and a half months refers to order but it just my point is it's not an accurate characterization of what the delay here is well we also have to put the context this delay in the context of the Helms delayed and suspended for 23 years I mean any delay to the print to the plaintiffs to be frank occurred long before this litigation was filed I mean they already have an expired claim because the plaintiff but the named plaintiff in this case the estate didn't acquire its interest of 2007 so there are a lot of issues here to the extent that they're arguing about losing evidence losing witnesses that most likely happened long before this lawsuit was and here we have a very real and concrete threat to a Beto star they're facing 600,000 per violation of 600,000 euros fine per violation per the Spanish law and I know that opposing counsel is referring to other defendants who were in sanctions none of those defendants were Spanish entities and this is actually important because the EC regulation also contains a provision in article 9 that each member country can issue its own laws with respect to that EC regulation Spain is particularly draconian to be frank and has that has enacted a law which is cited in our in our papers that a Spanish entity who who participates in the Helms Bird Act proceeding without first obtaining authorization will be fined six hundred thousand euros France does not the the cases that they're citing have French entities German Dutch none of them were Spanish entities and we have to take that into account these are there's a reason why we afford district courts discretion and that is because these are unique circumstances it's very tempting to say we're gonna do a bright line bright line rule that a district court could never on the grounds of international comedy stay a litigation in deference to a foreign blocking statute but that's not what the court did here we're not deferring to a foreign blocking statute the district court said I'm gonna give you a chance to seek an exception to the foreign blocking statute that is what Iberostar was asking for time to get an exception to the blocking statute so that it could comply so that it could participate in these prisons not in deference to some ongoing proceeding well there is supposed to be obviously a ruling I don't think anyone anticipated at the time that so many global factors would it's not a parallel proceeding like there was that's true but Turner Turner obviously international comedy obviously indicates or implicates the situation where there can be a parallel proceeding but that's not an exclusive requirement for a stay based on international comedy as as the district court noted in this case you know there is still deference to in some respect of respect for our enforcing their own laws particularly a case of first interest in enforcing their own laws that are intended to block our own laws that might diminish the international comedy interests might well with respect to whether and in what circumstances to grant an exception because this is the first again our client was not saying we're hiding behind this blocking statute we can't participate our client is saying we want time to get an exception so that we can participate and that application that article 5 application is a case of first before the EC so time for them to take a look at this and say okay we put in this regulation that in if there is financial or legal consequences you know of an extreme nature that in certain circumstances we will allow an EU defendant to participate well let's take a look at that what are the situations we're looking at might might it be true that in in September or in in September when Marty received the ruling they thought well we under we understand given the current circumstances but five-and-a-half months later even if we limit it to five-and-a-half months later things might have seemed different the interest might have seemed different after that extended period of time such that at that point there might be a reason to renew that motion but the only thing they argued was okay it's an additional few months they argued the is okay it's an additional few months I think seems to minimize the extent of the delay and the effect that it has on the opposing parties ability to bring its lawsuit here again you can say okay it's been ten years I mean I guess we should wait for Europe right at a certain point that becomes too long I agree that at a certain point it does become too long but at the time that the district court had it even if you are looking at from the original April 2020 one order one year where the district court did take into account there was a pandemic going on this might you know be one of the reasons why the European Commission has been taking longer to rule on this and again in the context of the prejudice of the party there is a real and concrete threat to Beto Starr and yet to the plaintiff the damage was done by a 23-year suspension of the statute that's that's where the real prejudice came in not necessarily in the evidence as to ownership chain of title you know where the witnesses you know my concern is the stay itself looks to me indefinite and unreasonable I don't I don't know when it is but your honor in that case they should have appealed we were told you know we were in advance of this oral argument we were told oh the Commission's gonna do something by mid-september it's 16th here we are we're still waiting when should we wait till the end of the month to rule what what should we do wait forever no obviously of course your honor we can't wait forever but again we're bound by the record that was before the district court and if you're looking at if you look looking at the district court's order and trying to figure out whether it's indefinite and unreasonable in reinstate the September 20th I mean if I look at the whole record denial after denial after denial it looks to me like this is unreasonable and indefinite in scope what am I missing well it's not indefinite in the sense that we know that there's gonna be a definite cut off the district court did specify this is not when the EC grants your application this is whenever the EC rules and remember we do have the Supreme Court precedent in Landis saying even if there is there does seem to be an indefinite timeline a stay will not be moderate if there was a pressing need for it in this case we have significant financial and legal consequences that he got a better start would face and it seemed I think somewhat more pressing when the ruling was made does your client have the ability to make any filings with the Commission to request a ruling or we are in constant well the EC requests updates on the status of the litigation and we do every status report there is basically a renewal as my understanding of the communication but what the EC does with those communications I don't know when you when you say the renewal of the communication are there are there requests for a ruling or just updates that these stay is still continuing here I'm actually not sure yes they are requests for a ruling and in the original request was an expedited one that was made and and I think they they know that obviously that the stays in place and this is this is obviously a difficult issue of international law and it would it makes it a lot easier for the European Commission if they don't make a decision and United States courts stay action until they make a decision right yes of course it makes it easier yeah allows them to get the effect of their blocking regulation without having to decide whether to grant an exception to it your honors I see that my time is up I have anything else to say just said again it would be tempting to issue a bright line rule but we must be very careful to not strip the your honors let me quickly address jurisdiction and some of the questions on timing and I think the easiest way to do that is to apply the rule of King which is you need to have a state order that's immoderate and involves a protracted and indefinite period of delay to the facts of this case April 24th stay order it was entered a day after the motion was filed what did that motion stay docket entry 16 page 45 of your appendix paragraph 2 quote to avoid protracted delay this request for stays limited to no more than 75 days also in the motion I bear a star says the duration of the requested say short and subject to reasonable limits they represent to the court they expect a ruling in 10 weeks the court the next day stays how are we supposed to appeal that order on that record and prove to this court that we have an inmoderate and protracted an indefinite period of delay when the representation of the court is 10 weeks that is precisely why the rule is not that you must appeal that first day order instead it appears I haven't seen a court that has said it that it is a facts and circumstances case based on the facts and on those facts your honors I would not be here before you saying that we have an immoderate stay what happened next well the 10 weeks passed nothing happened we filed our first motion to lift the stay and the court ruled on that and it's September 17th order which was the lengthy order in that order judge was very careful to say I am studying these these reports that have come on I think three or four status reports have come out he said and he rightfully so the most recent status report indicates the Commission's isn't extensively involved this is page 120 of our record docket entry 25 he found that the EC was providing updates he quote said the European Commission's active consideration of the application is evidenced by the European Commission's active dialogue regarding the application since it was filed in April of 2020 and the court assured us that under the pickable precedent it's monitoring the status reports we know the status reports are not favored by this court under precedent but it gave us the court gave us the indication it was on it I don't think I could have come to this court again and said it's indefinite the court is actively engaging with us they're actively engaging with the EC there is no fine line or bright line the court has ruled well we waited many more months again nothing from the EC everybody's been affected by Cove it I understand that excuse but we waited several more months and then we have the May 4th order of 2021 that denied our renewed motion it was not a motion for reconsideration it was a renewed motion that as judge prior pointed out mentioned the European Commission's new pronouncement which had 15 points in it 9 through 15 had to do with the blocking statute that's 40% of their points had to do with the blocking statute we also mentioned the change in circumstances because other five of the folks had been to court hadn't been sanctioned 300 days since the application no time frame from the EU if the EU was said it's coming out we have a firm deadline maybe we also pointed out another judge in the district had set a five-month deadline that had been successful the party in that litigation got their ticket to court a few days before the five-day five-month deadline approached so what happened in the May 4th order that caused us to appeal well the May 4th order on no less than five occasions said until there's a ruling from the EC you're not going anywhere that is precisely the moment when the state becomes indefinite because there is no definition it's relying solely on that ruling and that's what judge Scholar said no less than five times in his May order that was the moment when this court has jurisdiction to take our notice of appeal because at that moment we are effectively out of court we have to wait for the EC there is nothing that we can do or say unlike what we did before to advise the court as to things that were happening we gave the judge new information and he said no that is the moment that I can come before this court with a ticket I think obviously for an appeal your honors district judges we say make errors all the time even if they make a clear error of law we cannot come to this court as you pointed out judge grant this is a non final order that is only appealable under a narrow exception and it has to be when we're effectively out of court that was the moment we're effectively out of court and it's borne by the record through today and by the way I think the court can and should look at the record through today it's done it before in the Peterson case that we cited in our papers the court when analyzing whether or not there was any prejudice had looked at the state court record it was a think judge prior and judge grant was on the case it's case number 19 1308 to Peterson versus PNC Bank the district court has stayed the proceedings pending a foreclosure trial the foreclosure trial had finished your honors noted that and said no prejudice thank you judges I wish you safe travels Thank You mr. Patricius we are adjourned for the week